# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| Jennifer C. Breazeale Watkins, on behalf of herself and all others similarly situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION |
| vs. | JURY TRIAL DEMANDED |
| FORD MOTOR CO., a Delaware corporation, | |
| Defendant. | |

## CLASS ACTION COMPLAINT
## NOTICE TO PRESERVE RECORDS AND DOCUMENTS

**You are hereby notified to preserve all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) during the pendency of this action that are relevant or may lead to relevant information and to notify your employees, agents and contractors that they are required to take appropriate action to do so.**

Plaintiff, Jennifer C. Breazeale Watkins, brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf all others similarly situated, and based upon her personal knowledge, acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys and alleges the following:

1

## INTRODUCTION

1.     Plaintiff Jennifer C. Breazeale Watkins ("Plaintiff" or "Watkins") brings this class action suit against Defendant, Ford Motor Company ("Defendant" or "Ford"), on her own behalf and on behalf of other similarly situated individuals who purchased Ford Explorer vehicles manufactured and/or sold by Defendant, with a manufacturing defect that causes premature corrosion to the vehicle's aluminum hood sections as well as unsightly bubbling and damage to the overlaying exterior paint of the vehicle's aluminum hoods (the "Corrosion Defect").

2.     This class action seeks damages, injunctive and declaratory relief on behalf of a class of all persons who purchased or leased model years 2011 through 2019 Ford Explorers.

3.     Through a common uniform course of conduct, Ford manufactured, supplied, promoted, and sold model year 2011 through 2019 Ford Explorers with the above-referenced manufacturing defect.

4.     Through a common and uniform course of conduct, Ford, acting individually and collectively through its agents and dealers, failed to adequately disclose to the consuming public the fact that its model year 2011 through 2019 Ford Explorers were manufactured with a serious defect which would cause consumers, such as Plaintiff to experience bubbling or blistering under the paint on Ford Explorer's aluminum hood panels and incur significant costs to remedy the

2

Corrosion Defect.  Further, despite having knowledge of the Corrosion Defect for almost two decades, Ford has failed to disclose same to consumers, and has also refused to provide necessary repairs to Explorer owners who have experienced the Corrosion Defects effects on their vehicles.

## JURISDICTION AND VENUE

5.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and (d), because (1) at least one member of the putative class is a citizen of a state different from any Defendant, (2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (3) none of the exceptions under that subsection apply to the instant action.

6.     Venue is proper in this District because Defendant transacts business in this District and because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

7.     Plaintiff, Jennifer C. Breazeale Watkins, is an adult individual residing in Brandon, Florida.

8.     On May 21, 2015, Plaintiff purchased, from Bill Currie Ford in Tampa Florida, a 2015 model year Ford Explorer XLT which contains the defects complained of herein.  Additionally, she purchased the Ford Extended Service Plan, including the PremiumCare plan.

9.     Defendant, Ford Motor Co., is a Delaware corporation with its principal place of business in Dearborn, Michigan.   Defendant designs, manufactures, markets, distributes, supplies, services, repairs, sells, and leases passenger vehicles under the Ford brand, including the class of vehicle purchased by Plaintiff throughout the country and in this District.

## CLASS ALLEGATIONS

10.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated, comprising a class for Counts I through VI consisting of "all persons in the United States and its territories who, within the applicable statute of limitations period, and as shown by Defendant's records, purchased or leased model year 2011 through 2019 Ford Explorer" (the "Class").

11.     Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated, comprising the Ford PremiumCare ESP Subclass consisting of "all persons in the United States and its territories who, within the applicable statute of limitations period, and as shown by Defendant's records, (1) purchased or leased a new or used Ford Explorer and (2) purchased a Ford PremiumCare Extended Service Plan."

12.     Plaintiff is a member of the Class and the Subclass.

13.     Excluded from the Classes are judicial personnel involved in considering the claims herein, all persons and entities with claims for personal

4

injury, the defendant, any entities in which the defendant has a controlling interest, and all of their legal representatives, heirs and successors.

14.   The Ford Explorer is one of Defendant's flagship models. Approximately 1.9 million model year 2011 through model year 2019 Ford Explorers have been sold.  It is estimated that the Class consists of thousands of persons throughout the continental United States and at least hundreds of members of the Subclass.  The members of the Classes are so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.  The exact number of Class members is presently unknown to Plaintiff, but can easily be ascertained from Defendant's sales and warranty claim records.

15.   There are numerous questions of law or fact common to the members of the Class, which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

a.   Whether Defendant Ford manufactured, distributed, supplied, marketed, and/or sold Ford Explorer vehicles?

b.   Whether there is a latent Corrosion Defect in the aluminum body panels contained in the Ford Explorers manufactured, distributed, supplied, marketed, and/or sold by Defendant?

c.   Whether Defendant, acting individually or collectively with its agents, failed to conduct appropriate, reasonable and adequate

testing of the model year 2011 through 2019 Ford Explorers to determine whether there were any defects which would affect the durability and longevity of the aluminum hood panels and their conformity to the reasonable expectations of consumers in the United States?

d.  Whether Defendant, acting individually or collectively with its agents, failed to warn or otherwise inform Plaintiff and other members of the Class of the premature and abnormal failure of the aluminum hood panels which result in the Corrosion Defect?

e.  Whether Defendant omitted to adequately disclose and/or affirmatively concealed, in its affirmations and promotional materials, among other things, the premature and/or abnormal wear associated with the model year 2011 through 2019 Ford Explorers?

f.  Whether Defendant engaged in unconscionable commercial practices, including the failure to abide by the terms of a written warranty and/or bait and switch tactics, in connection with warranty assertions, interpretations, claims and denials?

g.  Whether Defendant warranted or otherwise represented that its vehicles would be free from the Corrosion Defect experienced

6

by the Class and Subclass members?

h.  Whether   Defendant   continued   to   manufacture,   market,
    distribute, supply, and sell vehicles with the Corrosion Defect
    even after becoming aware of such defect?

i.  Whether the presence of the Corrosion Defect constitutes a
    breach of warranty?

j.  Whether Defendant's PremiumCARE Extended Service Plan
    complies with the requirements of the Magnuson-Moss Warranty
    Act?

16.    The claims asserted by the named Plaintiff are typical of the claims of
the members of the Classes.

17.    This class action satisfies the criteria set forth in Fed. R. Civ. P. 23(a)
and 23(b)(3) in that Plaintiff is a member of the Classes; Plaintiff will fairly and
adequately protect the interests of the members of the Classes; Plaintiff's interests
are coincident with and not antagonistic to those of the Classes; Plaintiff has retained
attorneys experienced in class and complex litigation; and Plaintiff has, through her
counsel, access to adequate financial recourses to assure that the interests of the
Classes are adequately protected.

18.    A class action is superior to other available methods for the fair and
efficient adjudication of this controversy for at least the following reasons:

a.  it is economically impractical for most members of the Classes to prosecute separate, individual actions; and

b.  after the liability of Defendant has been adjudicated, the individual and aggregate claims of all members of the Classes can be determined readily by the Court.

19.    Litigation of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members which would substantially impair or impede the ability of other Class members to protect their interests.

20.    Absent this suit proceeding as a class action, most members of the Class and Subclass would find the cost of litigating their individual claims to be prohibitively expensive and would not be able to obtain any effective remedy for their damages.

21.    Defendant has acted and failed to act on grounds applicable to both Plaintiff and the other members of the Class and Subclass, necessitating the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

22.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class and Subclass are the same, causing injury to Plaintiff

and to all of the other members of the class and Subclass. Plaintiffs and the other members of the Class and Subclass have all suffered harm and damages due to the unlawful and wrongful conduct of Defendant.

23.     Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class members.

## FACTUAL ALLEGATIONS

24.     Defendant has produced Ford Explorers since the 1991 model year. Defendant's Ford Explorer marketing materials and brochures advertised the Explorer as having a strong structure with advanced materials and technology. For example, the Explorer's 2011 marketing brochure claims that the "2011 Explorer has a body/frame that's lighter yet stronger than before." Its 2015 brochure tells consumers to "Revel in its strength, stability and style."

25.     Defendant's 2014 and 2015 Explorer brochures repeated that same "built Ford tough" mantra, stating: "Capability: A strong structure with advanced materials and technology serves as the foundation for impressive on-and off-road capability."

26.     What Defendant has failed to communicate to prospective Ford Explorer buyers, however, is that its decision to move to a lighter vehicle frame has

come at a significant price for Explorer owners.

27.    Upon information and belief, Ford began installing aluminum panels into the frames of its vehicles in or about the year 2000.  Ford began installing aluminum panels into its Ford Explorer models during approximately 2002.  Ford replaced heavier steel hoods - the section of the frame covering the engine - with lighter aluminum panels in order to reduce vehicle weight and increase fuel efficiency.  However, Ford's aluminum hood carries an inherent, latent defect: it quickly corrodes and cause the overlaying paint layer to bubble, peel, and/or blister.

28.    Ford has been aware of this Corrosion Defect for over a decade.  Since 2004, Ford has issued several Technical Service Bulletins ("TSBs") - which are recommended steps and procedures for repairing its vehicles - identifying to its service technicians the aluminum panels as a source of corrosion.  For example, on December 27, 2004, Defendant issued TSB 04-25-l ("2004 TSB"), applicable to Ford Explorers from model years 2000 – 2005.  The 2004 TSB states:

> Some vehicles may exhibit a bubbling or blistering under the paint on aluminum body parts.  This is due to iron contamination of the aluminum panel.  Ford's Scientific Research Laboratory has performed a number of tests on vehicle body parts returned for corrosion related concerns.  Testing has revealed that the aluminum corrosion was caused by iron particles working their way into the aluminum body part, prior to it being painted.

29.    Within two years, on December 11 2006, Ford reissued this same warning about the Corrosion Defect to its service technicians in TSB 06-25-15

10

("2006 TSB") – titled "ALUMINUM BODY PANELS-CORROSION-SERVICE TIP" - applicable to Ford Explorers from model years 2002 – 2007.  Ford intended for the 2006 TSB to supersede the 2004 TSB, and repeated the same concerns about the corrosion Defect.

30.    Ten years later, Ford still had not developed an answer for the Corrosion Defect.  On February 26, 2016, Ford issued a third TSB on the same problem.  TSB 16-0028 ("2016 TSB") - titled "Aluminum Panel Corrosion" – covering Ford Explorers from model years 2002-2016, states:

> Some 2000 and newer Ford, Lincoln and Mercury vehicles equipped with aluminum body panels may exhibit corrosion concerns appearing as bubbled and/or peeling paint with or without accompanying white dust.  Panel replacement is not required.

31.    On August 23, 2017, Ford issued its fourth bulletin on the same issue – TSB 17-0062 ("2017 TSB"), superseding TSB 16-0028, which had covered 2000 – 2017 Explorers.  The 2017 TSB now states "*Panel replacement is recommended*" and instructs Ford repair technicians to replace the entire corroding aluminum panel. (emphasis added).

32.    Ford's corroding aluminum problem and the Corrosion Defect remain unresolved.  Just last year, on February 6, 2019, Ford issued its most recent (its Fifth) TSB addressing the Corrosion Defect - 19-2026 ("2019 TSB") - which supersedes all prior TSBs and covers 2002 to 2018 Ford Explorers.  This TSB repeats the same concerns from the 2004 TSB, stating:

> Some 2000 and newer Ford, Lincoln and Mercury vehicles equipped with aluminum body panels may exhibit corrosion concerns appearing as bubbled and/or peeling paint with or without accompanying white dust. *Panel replacement is recommended.*

(emphasis added).

33.    Despite the fact that Ford, as evidenced by the multiple TSBs it issued, clearly knew that its Explorer models were, at the time of manufacture, likely vulnerable to the Corrosion Defect, it continued to market, distribute, and sell vehicles containing aluminum body panels to consumers, such as Plaintiff Watkins.

**Consumer Complaints.**

34.    Many consumers in the United States, such as Plaintiff, have experienced the Corrosion Defect.  Many Ford Explorer owners have complained on the internet about their Explorer's paint bubbling and then peeling.  *See e.g., Car Talk Car Complaints, Oct 18, 2016.*[1]  This article demonstrates that complaints of paint bubbling and peeling far outnumber every other complaint regarding the Ford Explorer.

35.    Another Ford Explorer owners' internet site, CarComplaints.com, demonstrates the volume of complaints relating to the Corrosion Defect, particularly for the 2011 through 2014 model years.  For 2011, rust, corrosion and damaged paint was the most significant complaint.

---

[1]    Available at https://www.cartalk.com/blogs/car-talk-car-complaints/first-signs-carpocalypse-2011-2016-ford-explorer-paint-problems.



Of those complaints, rust and paint damage on the hood was most significant.



https://www.carcomplaints.com/Ford/Explorer/2011/

36.     Likewise, the most significant complaint for 2012 Ford Explorers was rust on the hood, followed by cracked paint on the hood.



https://www.carcomplaints.com/Ford/Explorer/2012/

37.     The highest volume of complaints about 2013 Ford Explorers relates to body and paint issues.



Of those, paint bubbling off the hood and rust are the most significant.



Source: https://www.carcomplaints.com/Ford/Explorer/2013/

38.     The 2015 Ford Explorer also suffers from a significant number of Corrosion Defects.



39.     Despite the plethora of Ford Explorer owners' complaints, Ford has refused to cover corrosion damage at no cost.  For example, during December 2015, one owner notes:

> The paint is bubbling all along the front of the hood of my 2013 Ford Explorer XLT.  It looks aw[]ful.  Makes me sick to look at it everyday. Makes even more sick and angry to think of the amount of money I paid for my Explorer XLT and they won't cover fixing it.
>
> - kostuch, Menomonie, US

Another owner says:

> We have owned 5 Explorers.  Never has this happened.  Paint started bubbling in 2016 in a very small spot.  Then over time it has made its way around the front of the hood.  It looks terrible.  Makes me sick. The fact that Ford will not do anything about it is pathetic.  Since I'm aware of the issue because of my Explorer I tend to look at other peoples Explorers and I see the problem a lot.  This is a major problem and obviously a corrosion issue or paint problem from the factory.  This wide of a problem and this major means Ford should do the right thing and fix this issue.  My repair estimate is $1200.00.  Money I don't have to spend on this. Ford should fix this.  As a long time Ford fan this is changing my thinking.
>
> - candc, Attalla, US

Another owner, during July 2018, notes:

> As admitted by the dealership - Ford knows, and has known, about this problem with the hoods on 2012-2015 Ford Explorer hoods.  The paint is bubbling and corrosion is setting in.  The dealership suggest filing a claim with Ford corporate.  Corporate will refer it to a local Ford representative who will investigate and make a determination.  If Ford knows this is a problem, and has known it for years and has done nothing about it, why doesn't Ford corporate just make the decision and replace the hoods when this occurs?

- Jim R., Greenwood, IN, US

And another, during September 2018, complains:

> There needs to be a recall for this problem!  The paint on a car that has
> been mostly garage kept shouldn't be peeling off.  Especially when it is
> only 5 years old.

- dianad67, Charleston, US

**Ford's New Vehicle Warranties.**

40.    Each new Ford Explorer comes with a "New Vehicle Limited
Warranty" that provides bumper-to-bumper coverage for a period of 36 months or
36,000 miles, whichever occurs earlier.

41.    Ford's new vehicle warranty for 2015 also includes an extended
Corrosion Coverage Period, which lasts for five years, regardless of miles driven.
However, this coverage "only applies if a body sheet metal panel becomes perforated
due to corrosion during normal use due to a manufacturing defect in factory-supplied
materials or factory workmanship."

42.    However, the problem with Ford's Extended Corrosion Warranty is that
it is impossible for Ford's aluminum body panels to perforate from corrosion, a fact
known to Ford for years.  Indeed, in 2013 and 2014 Ford's representatives provided
deposition testimony in litigation concerning several Ford Mustang models – which
also contain aluminum body panels – that, although they were aware that Ford's
aluminum body panels experience corrosion, they had never seen Ford aluminum

body panels perforate through completely.

43.     Even though Ford knew in 2013, and likely much earlier given the several TSBs addressing aluminum corrosion, that its Extended Corrosion Warranty could never actually be invoked, it did not revise its corrosion warranty until 2016.

44.     For the 2016 model year, Ford's corrosion warranty was revised to specifically address aluminum corrosion, and now states:

> Your vehicle's body sheet metal panels are covered for an extended Corrosion Coverage Period, which lasts for five years, regardless of miles driven. The extended warranty coverage only applies if a body sheet metal panel becomes perforated due to corrosion during normal use due to a manufacturing defect in factory-supplied materials or factory workmanship. **If aluminum body panels have corrosion or rust damage, and the damage is not the result of abnormal usage, vehicle accident, customer actions and/or extreme environmental conditions, the corrosion or rust damage repairs are covered for 5 years, unlimited miles.** For damage caused by airborne material (environmental fallout) where there is no factory-related defect involved and therefore no warranty – our policy is to provide free repair of paint damage due to the airborne material for 12 months or 12,000 miles, whichever occurs first.

(emphasis added).

45.     However, despite the 2016 revision to its corrosion warranty, Ford continues to deny corrosion warranty claims for 2015, and earlier, model years.

46.     Whenever consumers purchase a Ford vehicle, they are encouraged to also separately purchase one of Ford's Extended Service Plans ("ESPs"). Ford's ESPs are service contracts that allow consumers to pay an amount up front in exchange for the ability to receive service repairs in the future for free, after paying

a deductible.

47.    Ford represents that its ESPs provide "extended protection after your Bumper to Bumper Warranty expires."  Further, "[w]hen you purchase Ford ESP, you receive peace-of-mind protection throughout the United States and Canada, provided by a network of Ford Motor Company dealers."

48.    While Ford offers multiple ESP plans that differ in price and coverage, it uses a standard registration form for all of its ESPs.  Ford's standard registration form requests the owner's name, address, contact information, and Vehicle Identification Number.

49.    Notably, Ford's standard ESP registration form references "certain terms and conditions," but does not actually include those terms as part of the registration form.

50.    Instead of providing clear and conspicuous ESP terms and conditions, on information and belief, Ford directs its sales agents to provide ESP customers with two-sided brochures specific to the particular ESP that the customer purchases.

51.    For example, the front side of Ford's brochure for its PremiumCARE ESP - the most expensive and comprehensive of the ESPs - states that it:

> covers the parts and labor to repair thousands of key components – engine, transmission, steering, brakes, front suspension, electrical and more ....  Failure of covered components due to defects in materials and workmanship and normal wear and tear are included.  **With Ford ESP PremiumCARE, it's covered.**

(emphasis in original).

52.    While Ford's PremiumCARE ESP brochure touts its expansive coverage of 1,000+ vehicle parts (though it does not provide a complete list), it also includes a list, located at the bottom of the backside of the brochure and in fine print smaller than the brochure's other text, of vehicle parts that are not covered.

53.    This list of uncovered parts is also expansive, and includes brakes (though brakes are listed as a covered component elsewhere in the brochure), repairs covered by recalls, insurance, or if the vehicle is within any warranty, repairs caused by "improper unreasonable use," "fixed (non-moving) body parts," and "structural underbody framework."

54.    In essence, Ford's PremiumCARE marketing materials confusingly state that "with PremiumCARE, it's covered," but also that PremiumCARE covers only those repairs that are not excluded.

**Plaintiff Watkins' Facts.**

55.    Plaintiff Watkins purchased a new 2015 Ford Explorer XLT on May 21, 2015.

56.    Therefore, according to her New Vehicle Limited Warranty, the Extended Corrosion Warranty on Plaintiff's 2015 Ford Explorer does not expire until May 2020.

57.    Additionally, at the same time, Plaintiff Watkins purchased Ford's

PremiumCARE ESP, providing coverage for 96 months, or 100,000 miles, for an additional cost of $3,226.05.  As part of her PremiumCARE purchase, Plaintiff was merely provided with Ford's marketing brochure and was only required to complete Ford's standard ESP registration form.

58.    Within the first year after her purchase, Plaintiff discovered that the paint along the edge of her Explorer's hood was bubbling, indicating that the vehicle's aluminum hood was corroding and that she was experiencing the effects of the Corrosion Defect.  She first noticed a single spot on the hood but later began to notice additional spots where the paint was failing.

59.    Despite the fact that she brought her Ford Explorer to her dealer at regular intervals, she was never made aware that the bubbling and peeling paint spots on her hood was as a result of the Corrosion Defect.

60.    During 2019, she became aware that there were additional areas on the inside of her Ford Explorer's hood where the paint was bubbling and peeling, indicating that the Corrosion Defect was now causing more damage.

61.    On December 7, 2019, shortly after she became aware of the extensive effects of the Corrosion Defect, Plaintiff brought her Explorer to the Ford dealership in order to have her corrosion damage repaired.  Plaintiff believed that her corrosion damage was covered by her Ford New Vehicle Warranty, and, if not, at by the PremiumCare ESP.  However, the dealer refused to replace her hood, even though,

as she was informed, Ford was replacing the hoods of the 2016 model year vehicles.

62.     Even though Plaintiff's Explorer was still within the Extended Corrosion Warranty, and her PremiumCARE ESP was still active, Ford refused to repair Plaintiff's corrosion damage because it determined that neither her Extended Corrosion Warranty nor her PremiumCARE ESP provided coverage.  Ford refused to cover the corrosion damage to Plaintiff's Explorer under the Extended Corrosion Warranty because her aluminum hood had not perforated completely, and considered the corrosion damage outside the scope of the PremiumCARE ESP.

63.     Despite Defendant Ford's instructions to its dealers in the 2017 and 2019 TSBs that the corroded aluminum panels should be replaced, Ford refused to replace Plaintiff's defective hood under the warranty or PremiumCARE ESP.

64.     The paint bubbling and other effects of the Corrosion Defect on Plaintiff's Ford Explorer has resulted in a significant decrease in its resale value. The panel replacement is very expensive and the problem cannot be remedied by a new coat of paint because the underlying defect in the aluminum hood would cause any new paint to bubble as well.

65.     Plaintiff would not have purchased the Ford Explorer, or would have paid significantly less for it, had she known that it contained the Corrosion Defect and would suffer from significant rust and corrosion.  Additionally, Plaintiff would not have purchased Ford's PremiumCARE ESP had she known that it would not

cover a latent defect such as the Corrosion Defect, or would have paid significantly less for it.

## COUNT I
### Violation of 15 U.S.C. § 2301 *et seq*., (the Magnusson-Moss Warranty Act)
### (On behalf of Plaintiff Watkins, the Class, and Subclass)

66.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

67.    Plaintiff and the other Class and Subclass members are "consumers" within the meaning of 15 U.S.C. § 2301 (3).

68.    Defendant Ford is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301(4) and (5).

69.    The defective Ford Explorer vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

70.    A consumer damaged by a warrantor's noncompliance with an implied warranty has a cause of action pursuant to 15 U.S.C. § 2310(d) (1).

71.    Each Ford Explorer vehicle purchased by the Class and Subclass members came with an implied warranty of merchantability such that each vehicle was warranted to be of merchantable quality, would pass without objection in the trade, and was fit for the ordinary purposes for which it was to be used.

72.    Plaintiff and the other Class and Subclass members each contracted with Ford to purchase Ford Explorer vehicles, and the purchase price paid by

Plaintiff and the Class and Subclass members constituted substantial consideration for the vehicles.

73.    In connection with the purchase or lease of the defective Ford Explorers, and as detailed above, Defendant Ford provided Plaintiff and the Class and Subclass members with a "New Vehicle Limited Warranty" providing "Bumper to Bumper" coverage for defects in materials and workmanship of the Ford Explorer for three years or 36,000 miles, and an Extended Corrosion Warranty covering corrosion damage relating to such defects for a period of up to 5 years, both of which are covered under 15 U.S.C. § 2301 (6).

74.    Ford breached its warranties, as described in more detail herein, and is therefore liable to Plaintiff and the Class and Subclass members pursuant to 15 U.S.C. § 2310 (d) (l).   Without limitation, the Ford Explorer vehicles share a common design and/or manufacturing Corrosion Defect in that the vehicles are defectively designed and built with a propensity to cause its body to prematurely corrode and the exterior paint to bubble, flake, peel, and/or rust.

75.    Ford's Extended Corrosion Warranty is illusory because the coverage applies when corrosion causes perforation, but, as Ford has known for years, the aluminum body panels do not perforate from corrosion.

76.    Defendant Ford has admitted, expressly and tacitly, that the Ford Explorers suffer from a Corrosion Defect of its own making.   However, Ford has

25

refused to fully cover repairs and acknowledge the Corrosion Defect, and failed to inform current and future purchasers and lessees of Ford Explorers of the Corrosion Defect.

77.    At the time of sale, Defendant Ford knew of the Corrosion Defect and the substantial and material risk of corrosion and damage to the vehicle's body, causing deterioration of the vehicle's appearance and value.    Accordingly, Defendant Ford knew the vehicles were materially different and inferior than the vehicles consumers believed they had purchased.

78.    Ford's breach of warranty deprived Plaintiff and the Class and Subclass members of the benefit of their bargain with Ford, as the quality, durability, and appearance of the vehicle's aluminum hood, along with the vehicle's ability to withstand corrosion, were material to their purchasing decisions.

79.    In its capacity as a warrantor, Defendant Ford had knowledge of the inherent Corrosion Defect in the Ford Explorer vehicles.

80.    Defendant Ford failed to effectively remedy the breach as to Plaintiff and, despite being aware of the defective aluminum hoods and being informed of the defect by numerous other Class and Subclass members, Ford has failed to provide any reasonable remedy.

81.    Under these circumstances, any requirement for other Class and Subclass members to provide Ford any further reasonable opportunity to cure its

breach of the implied warranty should be deemed satisfied and fully excused.

82.    Under 15 U.S.C. § 2310 (e), notice of breach of warranty need not be provided until after Plaintiff has been appointed as Class Representative.  As a proximate and foreseeable result of Ford's breach of warranty, Plaintiff and the Class and Subclass members have and/or will sustain damages and loss.  These damages include, *inter alia*: the decrease in resale value of their vehicles resulting from the Corrosion Defect, including color fading peeling/delamination, and increased rust and corrosion; expectation damages as a result of Plaintiff and the Class and Subclass members having been denied the benefit of the bargain they agreed to with Ford; and any further monetary or other damages that Plaintiff and the Class and Subclass members have incurred and/or will incur in order to effectively remedy the Corrosion Defect.

83.    The amount in controversy of Plaintiff's individual claim meets or exceeds $25 in value, and the total sum or value of all claims to be determined in this class action meets or exceeds $50,000 (not including interest and costs).

84.    Given the latent nature of the Corrosion Defect and Defendant Ford's concealment thereof, any limitations period that would otherwise bar the claims of Plaintiff or the other Class and Subclass members should be tolled.  Additionally, Plaintiff and the Class and Subclass members continue to suffer a violation of their legally protected interests each day that Ford fails to remedy the defect and make

them whole.

## COUNT II
### Violation of 15 U.S.C. § 2301 *et seq.*, (the Magnusson-Moss Warranty Act)
### (On behalf of Plaintiff Watkins and the Ford PremiumCARE ESP Subclass)

85.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

86.     Defendant Ford's PremiumCARE ESP is a "service contract" within the meaning of 15 U.S.C. § 2301(8).

87.     The Magnusson-Moss Warranty Act requires that "the terms and conditions of service contracts shall be fully, clearly, and conspicuously disclosed" in "simple and readily understood language."  15 U.S.C. §§ 2306 (a) and (b).

88.     Additionally, in 2015 the Federal Trade Commission, the agency responsible for issuing interpretations of the Magnuson-Moss Warranty Act, specifically stated that the Act "prohibits service contract providers from failing to clearly and conspicuously disclose material terms and conditions or otherwise deceiving consumers with respect to the scope and nature of service contracts."[2]

89.     As described herein, Defendant Ford's marketing materials regarding its PremiumCARE ESP do not fully disclose the scope and nature of the service

---

[2]  *See Final Action Concerning Review of Interpretations of Magnuson-Moss Warranty Act; Rule Governing Disclosure of Written Consumer Product Warranty Terms and Conditions; Rule Governing Pre-Sale Availability of Written Warranty Terms; Rule Governing Informal Dispute Settlement Procedures; and Guides for the Advertising of Warranties and Guarantees*, 80 FR 42710 – 42723 (July 20, 2015).

contract, fail to clearly and conspicuously disclose the service contract's material terms and conditions, and otherwise deceives consumers regarding the full scope of the service contract.

90.    Defendant Ford has violated the Magnuson-Moss Warranty Act's requirements by:

a. Failing to disclose the full extent of its PremiumCARE ESP's coverage;

b. Failing to disclose its PremiumCARE ESP in terms readily understood by consumers;

c. Failing to clearly and conspicuously disclose, in readily understood language, which components, parts, and repairs are and are not covered by the PremiumCARE ESP; and,

d. Deceiving consumers with respect to the scope of the PremiumCARE ESP by touting its expansive coverage in prominently-displayed large font but then listing components not covered only in smaller "fine print" elsewhere.

91.    Defendant Ford's failures to comply with the Magnuson-Moss Warranty Act's requirements have damaged Plaintiff and the other Ford PremiumCARE ESP Subclass members, such that they have a cause of action under 15 U.S.C. § 2310 (d).

92.     Had Defendant Ford properly disclosed the true scope and material terms of its PremiumCARE ESP to Plaintiff and the Ford PremiumCARE ESP Subclass members, they would have chosen not to purchase the PremiumCARE ESP, or would have paid substantially less.  This is especially true in light of Defendant Ford's failure to properly disclose the underlying Corrosion Defect.  As a direct and proximate result of Ford's failures, Plaintiff and the Ford PremiumCARE ESP Subclass members have been damaged in amounts to be proven at trial.

93.     With regards to Plaintiff, Defendant Ford and/or its agents had ample opportunity to remedy the failures described above.

94.     Under 15 U.S.C. § 2310 (e), notice of Defendant Ford's violations of 15 U.S.C. §§ 2306 (a) and (b) need not be provided until after Plaintiff Watkins has been appointed Class Representative.

95.     As a proximate and foreseeable result of Defendant Ford's breach of warranty, Plaintiff Watkins and the Ford PremiumCARE ESP Subclass members have and/or will sustain damages and loss, including but not limited to the decreased value of the PremiumCARE ESP.

96.     The amount in controversy of Plaintiff's individual claim meets or exceeds $25 in value and the total sum or value of all claims to be determined in this class action meets or exceeds $50,000 (not including interest and costs).

**COUNT III:**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff Watkins and the Class and Subclass)**

97.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

98.     Plaintiff and the Class and Subclass members each contracted with Defendant Ford, through its dealer-agents and its related entities, to purchase Ford Explorer vehicles, and the purchase price that Plaintiff and the Class and Subclass members paid constituted substantial consideration for the vehicles.

99.     The Ford Explorer vehicles that Plaintiff and the Class and Subclass members purchased contained the inherent, latent Corrosion Defect that existed at the time the vehicles left Defendant Ford's factory.

100.    Defendant Ford breached the implied warranty of merchantability that Ford provided to each vehicle owner, as the Ford Explorer vehicles that Plaintiff and the Class and Subclass members purchased were not fit for the ordinary purposes for which they were to be used.  The purchased vehicles were objectively unreasonable and would not pass inspection as conforming goods within the trade, because at the time of sale each vehicle had a defective aluminum hood that quickly corroded and caused the overlaying paint layer to bubble, peel, and/or blister, and has caused or will cause rust and corrosion, during the vehicle's lifetime.

101.   The Corrosion Defect in Defendant Ford's Explorer vehicles is the direct and proximate cause of the damages and losses incurred, and/or to be incurred by Plaintiff and the Class and Subclass members in an amount to be determined at trial.  These damages include, *inter alia*: the decrease in resale value of the vehicles resulting from the Corrosion Defect, increased rust and corrosion and the paint layer bubbling, peeling, and/or blistering; expectation damages as a result of Plaintiff and the Class and Subclass members being denied the benefit of the bargain they agreed to with Ford; and any further monetary or other damages that Plaintiff and the Class and Subclass members have incurred and/or will incur in order to effectively remedy their vehicles' problems related to the corrosion Defect.

102.   Given the latent nature of the Corrosion Defect and Defendant Ford's concealment thereof, any limitations period that would otherwise bar the claims of Plaintiff or the Class or Subclass members should be tolled.  Additionally, Plaintiff and the Class and Subclass members continue to suffer a violation of their legally protected interests each day that Ford fails to remedy the defect and make them whole.

**COUNT IV:**
**Breach of Express warranty**
**(On behalf of Plaintiff Watkins and the Class and Subclass)**

103.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

32

104. In connection with the purchase or lease of Plaintiff and the Class and Subclass members' Ford Explorers, as detailed above, Defendant Ford provided Plaintiff and the Class and Subclass members with a warranty covering defects in material and workmanship for three years or 36,000 miles, and an extended warranty covering corrosion damage relating to such defects for five additional years and unlimited mileage.

105. Defendant Ford's warranties were a basis of the bargain reached when Plaintiff and the Class and Subclass members purchased or leased their Ford Explorers.

106. Defendant Ford breached its express warranties by (a) knowingly providing Plaintiff and the Class and Subclass members with Ford Explorers that Ford knew contained the Corrosion Defect; (b) failing to repair or replace Plaintiff Watkins and the Class and Subclass members' Ford Explorers at no cost within the warranty; (c) ignoring and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to Ford's representations.

107. Plaintiff and the Class and Subclass members have given Ford reasonable opportunity to cure its breach of express warranty or else were not required to do so because any such opportunity to cure would be futile.

108. These damages include, *inter alia*: the decrease in resale value of the vehicles resulting from the Corrosion Defect increased rust and corrosion and the

paint layer bubbling, peeling, and/or blistering; expectation damages as a result of Plaintiff and the Class and Subclass members being denied the benefit of the bargain they agreed to with Ford; and any further monetary or other damages that Plaintiff and the Class and Subclass members have incurred and/or will incur in order to effectively remedy their vehicles' problems related to the Corrosion Defect. Ford has been provided notice of the issues raised in this Count, as detailed above.

109. Given the latent nature of the Corrosion Defect and Ford's concealment of the defect, any limitations period that would otherwise bar Plaintiff Watkins or the Class or Subclass members' claims should be tolled.

## COUNT V:
### Fraudulent Concealment
### (On behalf of Plaintiff Watkins and the Class and Subclass)

110. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

111. Defendant Ford intentionally misrepresented, concealed, omitted and/or suppressed material facts concerning the quality of its Ford Explorer vehicles and the design and production processes, including those of aluminum hoods used thereon, as well as the existence of the Corrosion Defect from Plaintiff and the Class and Subclass members.

112. Despite advertising its Ford Explorer vehicles as durable and being of high quality, Defendant Ford knew, when it manufactured, marketed, and sold or

leased the Ford Explorer vehicles, that the design and/or production processes used thereon suffered from a design and/or manufacturing defect that reduced the Ford Explorer vehicles' value and subjected the Ford Explorer vehicles to premature corrosion that causes the Ford Explorer vehicles' exterior paint to bubble, flake, peel, and/or rust.

113.   Defendant Ford failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Ford Explorer vehicles. Ford knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profits.  Through its active concealment and/or suppression of these material facts, Ford sought to increase consumer confidence in the Ford Explorer vehicles, and to falsely assure purchasers that the Ford Explorer vehicles were of sound quality and that Ford was a reputable manufacturer that stands behind the automobiles it manufactures.  Defendant Ford engaged in this behavior to protect its profits, avoid warranty replacements, avoid recalls that would impair the brands image, cost it money, and undermine its competitiveness in the automobile industry.

114.   Defendant Ford, through its advertisements and representations, intended to induce Plaintiff and the Class and Subclass members to purchase its Ford Explorer vehicles and to purchase them at a higher price than Plaintiff and the Class and Subclass members would have paid had the defect been disclosed.  Further, Ford

continues to misrepresent, conceal and/or omit material facts in an effort to avoid being responsible for remedying the Corrosion Defect.  Ford developed and implemented a concerted plan to respond to customer's complaints by denying the existence of a defect and refusing to appropriately fix the vehicles.

115.   Defendant Ford had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Corrosion Defect because:

    a.  Ford had exclusive or far superior knowledge of the Corrosion Defect and concealment thereof, given that it and/or its agents designed and manufactured the aluminum hoods of the vehicles and manufactured, distributed, and/or supplied the vehicles to consumers;

    b.  Ford knew the facts regarding the Corrosion Defect, and the concealment thereof was known and/or accessible only to Ford;

    c.  Ford knew that Plaintiff and the Class and Subclass members did not know about, or could not reasonably discover, the Corrosion Defect and concealment thereof; and,

    d.  Ford made representations and assurances about the qualities of the Ford Explorer vehicles and about the existence of a repair for the Corrosion Defect.

116.   These omitted and concealed facts were material because a reasonable

consumer would rely on said facts in deciding to purchase or lease the Ford Explorer vehicles, and because said facts substantially reduced the value of the Ford Explorer vehicles Plaintiff and the Class and Subclass members purchased or leased.  Whether the Ford Explorer vehicles were defective or were durable and of sound quality, and whether Ford stood behind such Ford Explorer vehicles, would have been an important factor in Plaintiff and the Class and Subclass members' decision to purchase or lease the Ford Explorer vehicles.  Plaintiff and the Class and Subclass members trusted Ford not to sell them vehicles that were defective and significantly overpriced.

117.   Defendant Ford intentionally and actively concealed and suppressed these material facts to falsely assure consumers that its Ford Explorer vehicles were free from known defects, as represented by Ford and reasonably expected by consumers.  Plaintiff and the Class and Subclass members were unaware of these omitted material facts and would have paid less for the Ford Explorer vehicles, or would not have purchased/leased said vehicles at all, if they had known of the concealed and suppressed facts.

118.   Plaintiff and the Class and Subclass members did not receive the benefit of their bargain due to Defendant Ford's fraudulent concealment.  Plaintiff and the Class and Subclass members' actions in purchasing or leasing the Ford Explorer vehicles were justified because Ford was in exclusive control of the material facts

concerning the Corrosion Defect, and such facts were not known or reasonably knowable to the public, Plaintiff, or Class, or Subclass members.

119. Plaintiff and the Class and Subclass members relied to their detriment upon Defendant Ford's fraudulent misrepresentations and material omissions regarding the quality, durability, and high resale value of the Ford Explorer vehicles.

120. Plaintiff and the Class and Subclass members' reliance was justified because Defendant Ford is in exclusive control of the material facts concerning the Corrosion Defect, and such facts were not known or reasonably knowable to the public, Plaintiff, or Class, or Subclass members.

121. As a direct and proximate result of Defendant Ford's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiff and the Class and Subclass members suffered injuries. They purchased and leased Ford Explorer vehicles that had a diminished value by reason of Ford's concealment of, and failure to disclose, the Corrosion Defect.

122. Accordingly, Defendant Ford is liable to Plaintiff and the Class and Subclass for their damages in an amount to be proven at trial.

123. On information and belief, Defendant Ford has still not made full and adequate disclosure and continues to defraud consumers, such as Plaintiff, and the Class and Subclass members. Ford also continues to conceal material information regarding the Corrosion Defect.

124.   Defendant Ford's wrongful acts alleged herein were intentional and malicious and were taken with the intent to mislead and defraud.  As such, Plaintiff, and the Class and Subclass members are entitled to punitive and exemplary damages.

## COUNT VI
### Unjust Enrichment
### (On behalf of Plaintiff Watkins and the Class and Subclass)

125.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

126.   Plaintiff brings this unjust enrichment claim in the alternative, to the extent the Court finds that there was no express or implied warranties or contracts between Plaintiff and the Class and Subclass members on the one hand, and Defendant Ford, on the other hand.  Ford has received millions of dollars in revenue from Ford Explorer vehicles between 2011 and 2019.

127.   Defendant Ford manufactured, marketed and sold defective Ford Explorer vehicles to Plaintiff and the Class and Subclass members, by actively concealing the known defects and touting the vehicles' quality, durability and high resale value.

128.   Defendant Ford knew of the Corrosion Defect in its Ford Explorer vehicles at the time the vehicles were distributed to Ford dealerships and at the time the vehicles were sold to Plaintiff and the Class and Subclass members.

129.   Revenue from the sale of the Ford Explorer vehicles was a benefit

conferred upon Defendant Ford by Plaintiff and the Class and Subclass.   This revenue was a benefit which Plaintiff and the Class and Subclass members conferred upon Defendant Ford.

130.   Despite having knowledge of the Corrosion Defect, Defendant Ford failed to disclose the defect's existence to Plaintiff and the Class and Subclass members at or prior to the time of the sale and has failed to conduct any product recalls, or otherwise notify purchasers or potential purchasers of the defect.

131.   As a result of its failure or refusal to disclose the existence of the Corrosion Defect as set forth above, Defendant Ford was able to, and did, charge a higher price for its Ford Explorer vehicles than what the vehicles' true value should have been, such that Ford obtained monies that rightfully belong to Plaintiff and the Class and Subclass members.

132.   Plaintiff and the Class and Subclass members elected to purchase or lease their Ford Explorer vehicles based on Ford's misrepresentations, deception, and omissions.  Ford knew and understood that it would (and did) receive a financial benefit, and voluntarily accepted the same, from Plaintiff and the Class and Subclass members when they elected to purchase or lease the Ford Explorer vehicles.

133.   The Ford Explorer vehicles' Corrosion Defect, and Defendant Ford's concealment thereof, enriched Ford beyond its legal rights by securing, through deceit and falsehood, millions of dollars in revenues.

134.  Defendant Ford accepted and retained non-gratuitous benefits conferred by Plaintiff and the Class and Subclass members, who, without knowledge of the defect, paid a higher price for their Ford Explorer vehicles than its actual lower value.  Plaintiff Watkins and the Class and Subclass members did not confer these benefits officiously or gratuitously, and it would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

135.  Therefore, because Defendant Ford will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiff and each Class and Subclass member are entitled to recover the amount by which Ford was unjustly enriched at his or her expense.

136.  Plaintiff and the Class and Subclass members are therefore entitled to restitution in an amount to be determined at trial.

137.  Accordingly, Plaintiff, on her own behalf, and each Class and Subclass members seek damages against Defendant Ford in the amounts by which it has been unjustly enriched at Plaintiff and each Class and Subclass member's expense, and such other relief as this Court deems just and proper.

## COUNT VII
## INJUNCTIVE AND DECLARATORY RELIEF
### (On behalf of Plaintiff Watkins and the Class and Subclass)

138.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

41

139.   Plaintiff and each Class and Subclass will suffer irreparable harm, which may soon be immediate in nature, if Ford does not provide them with repairs or replacements of the Defective aluminum hoods.

140.   Plaintiff and each Class and Subclass lack an adequate remedy at law to compel Ford to repair the Corrosion Defect.  Plaintiff and each Class and Subclass cannot obtain such relief from other sources.

141.   Plaintiff and each Class and Subclass are entitled to injunctive and declaratory relief to compel Ford to repair and/or replace the defective aluminum hoods.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Ford and provide the following relief:

1.   An order certifying the Class and Subclass as defined above;

2.   A declaration that Defendant Ford breached its implied warranties, under Magnuson-Moss and under common law, to Plaintiff and the members of the Class and Subclass;

3.   An order requiring Ford to notify all Class and Subclass members of the Corrosion Defect and of its inaccurate and incomplete representations;

4.   An order awarding actual, compensatory, and punitive damages, as

42

proven at trial, to Plaintiff and the members of the Class and Subclass;

5.     An order of restitution, disgorgement, or such other equitable relief as the Court deems proper, in favor of Plaintiff and the members of the Class and Subclass;

6.     An order awarding reasonable attorneys' fees, costs, and pre- and post-judgment interest to Plaintiff and the members of the Class and Subclass;

7.     An injunction barring Ford from continuing to distribute, supply, market, and sell its Ford Explorer vehicles containing the Corrosion Defect as fit for their ordinary purposes until Ford has remedied the defects complained of; and,

8.     An award of such other and further relief that is just, equitable, or proper in favor of Plaintiff and the members of the Class and Subclass.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

Dated: January 14, 2020          By:  /s/ David H. Fink
                                     David Fink (P28235)
                                     Darryl Bressack (P67820)
                                     Nathan J. Fink (P75185)
                                     **FINK BRESSACK**
                                     38500 Woodward Ave., Suite 350
                                     Bloomfield Hills, Michigan 48304
                                     Phone: (248) 971-2500
                                     Fax: (248) 971-2600
                                     dfink@finkbressack.com
                                     dbressack@finkbressack.com
                                     nfink@finkbressack.com

                                     Marc H. Edelson
                                     (request for admission to be filed)
                                     Liberato P. Verderame
                                     (request for admission to be filed)
                                     **EDELSON & ASSOCIATES, LLC**
                                     3 Terry Drive, Suite 205
                                     Newtown, PA 18940
                                     Phone: (215) 867-2399
                                     medelson@edelson-law.com
                                     lverderame@edelson-law.com

                                     Jonathan Shub
                                     **KOHN, SWIFT & GRAF, P.C.**
                                     1600 Market Street, Suite 2500
                                     Philadelphia, PA 19103
                                     Phone: (215) 238-1700
                                     jshub@kohnswift.com

                                     *Attorneys for Plaintiff and the Putative Class*

44